**RNW ASSOCIATES, INC., Plaintiff,**

v.

**MINNESOTA WORKERS' COMPENSATION ASSIGNED RISK PLAN, Corporate Underwriters, Ltd., Risk Managers International, Inc., Nyle Large, Herschel Hancock, Fred Goad and Hugh Thompson, Defendants.**

No. Civ. 3–90–352.

United States District Court,
D. Minnesota,
Third Division.

May 31, 1991.

Reynaud Lemoine Harp, Harp Law Office, St. Paul, Minn., Daniel D. Ganter, Jr., Steffen & Munstenteiger, Anoka, Minn., for plaintiff RNW Associates, Inc.

Vance K. Opperman, Opperman Heins & Paquin, Minneapolis, Minn., for defendant Minn. Workers' Comp. Assigned Risk Plan.

Janet Scheel Stellpflug, Gilmore Aafedt Forde Anderson & Gray, Minneapolis, Minn., for remaining defendants.

## MEMORANDUM SUPPLEMENTING ORDER DATED March 7, 1991

RENNER, District Judge.

The above-captioned action came on for hearing on March 6, 1991 on the motion of defendant Minnesota Workers' Compensation Assigned Risk Plan ("ARP") for summary judgment and on the motion of the remaining defendants for dismissal or summary judgment. On March 7, 1991 the Court issued an order that, among other things, granted ARP's motion for summary judgment. The Court hereby sets forth its rationale for this decision.

## SUPPLEMENTAL MEMORANDUM

Defendant Minnesota Workers' Compensation Assigned Risk Plan (ARP) moved the Court for summary judgment in this matter brought by plaintiff RNW Associates ("RNW"). Plaintiff RNW is a Wisconsin corporation that leases truck drivers to trucking firms. Many of these firms consist of owner-operators and sole proprietors, who lease the drivers to drive their trucks for shipping firms. Among other things, RNW is responsible for all state and federal employment benefits required for its leased employees. RNW also tracks compliance with Department of Transportation requirements for drivers.

Defendant ARP is a workers' compensation insurer created by Minnesota statute. ARP provides workers' compensation insurance to small companies and employers of high risk employees who would otherwise be unable to obtain such insurance in the voluntary insurance market. *See* Minn. Stat. § 79.252, subd. 1. ARP's work is monitored by the Minnesota Commerce Commissioner which also adopts rules and procedures governing its operations. Many Minnesota trucking companies purchase workers' compensation insurance through ARP both because the companies are small and because truck driving is a risky occupation that many private insurers decline to cover. The premium charged is a percentage amount of the payroll for each particular job classification. Companies obtaining ARP coverage pay a premium at the beginning of each policy period based on the employer's estimate of its payroll. At the close of the period, ARP audits the payroll and, if necessary, either makes a premium deficiency assessment if the estimate was too low, or refunds excess premiums paid if the estimate was too high.

Defendant Corporate Underwriters issues workers' compensation insurance through various agents and affiliates. It is a corporation organized and operated pursuant to the laws of the British West Indies and maintains its principal place of business on Turks and Caicos Islands, B.W.I.

Defendant Risk Managers is a Texas corporation that acts as Corporate Underwriters' managing general agent for United States insurance operations. Individual defendants Herschel Hancock, Nyle Large, Fred Goad, Harry Thompson and Hugh Thompson are residents of Texas and are owners, principals, officers and/or directors of Risk Managers.

In April 1989, RNW purchased a one-year workers' compensation policy from Corporate Underwriters at a rate considerably less than it would have had to pay ARP. This policy was issued in Oklahoma and was intended to cover all RNW's employees including drivers leased to Minnesota companies. At all relevant times, Corporate Underwriters was not licensed to do business in Minnesota. Eight of the trucking companies leasing drivers from RNW for the year at issue, April 1, 1989 through April 1, 1990, had coverage for their own employees through ARP. When ARP did its annual payroll audit at these companies, the employers produced the certificates of insurance provided to them by RNW as proof that the drivers were covered. This alerted ARP to the fact that Corporate

Underwriters was not licensed to do business in Minnesota.

ARP has a policy that any employer using its insurance who also "leases" workers must produce evidence that the leased workers are covered through an insurer licensed in Minnesota. Absent such proof, ARP will charge the employer for those leased workers as if the company employed them directly. ARP therefore assessed the eight companies leasing RNW drivers for a premium covering the period from April 1, 1989 through April 1, 1990. On behalf of the companies, RNW appealed ARP's assessment to the Minnesota Commerce Department which upheld ARP's decision. Subsequently, RNW purchased ARP coverage at a considerably higher premium for its drivers leased to Minnesota companies for the year starting April 1, 1990.

On June 20, 1990 RNW filed suit in federal court against ARP, Corporate Underwriters, RMI and individual defendants. Plaintiff sought a temporary restraining order which was denied. Subsequently an amended complaint was filed.

Count one of the amended complaint seeks a declaratory judgment that the insurance RNW purchased from Corporate Underwriters met its statutory requirements to provide workers' compensation coverage for drivers leased from RNW by Minnesota companies, that the ARP has no liability for payments of benefits to RNW employees, and therefore is not entitled to receive premiums for RNW employees for the period from April 1, 1989 through April 1, 1990.

The essential question behind Count One is whether ARP is entitled to collect a premium for workers' compensation coverage of employees leased by Minnesota companies when the lessor of those employees has provided workers' compensation coverage through an insurer not licensed in Minnesota. ARP's argument for such an entitlement is that it faces exposure to risk of claims by leased workers injured in Minnesota. Workers injured in the state can seek workers' compensation from the state if injured there. *See* Minn.Stat. § 176.041 subd. 4. Such a claim is likely because Minnesota benefits are considerably higher than those offered in other states.

Pursuant to Minn.Stat. § 176.181 subd. 2, "every employer, ... shall insure payment of compensation with some insurance carrier authorized to insure workers' compensation liability in this state." A rebuttable presumption that workers' compensation insurance is available from a licensed insurer in Minnesota is set forth in Minn.Stat. § 60A.201 subd. 2, with the result that purchase of such insurance from a surplus lines insurer or any insurer not licensed in Minnesota is prohibited. *Id.* To support its position that the Minnesota companies leasing drivers from RNW may be considered employers for the purposes of workers' compensation benefits, defendant cites *Danek v. Meldrum Manufacturing & Engineering Co., Inc.*, 312 Minn. 404, 252 N.W.2d 255, 260 (1977), in which the Minnesota Supreme Court stated that a leased employee could be considered an employee of the company leasing his services. In *Danek*, the court found it cognizable that an employee could therefore be considered as having two employers. *Id.*

When RNW challenged ARP's position to the Minnesota Commerce Department, the Commerce Department ruled:

> absent a valid policy for R.N.W. which provides Minnesota benefits to its employees, who are otherwise entitled to such benefits in the event of work related injuries, a valid workers' compensation policy which provides coverage to R.N.W.'s Minnesota clients would be required to provide such coverage. Since exposure does exist, because an employee who is entitled to Minnesota benefits can make a claim against any involved policy, an insurer would be entitled to premium.

Sheehan Aff. Exh. B. While the Court is not obligated to follow such a ruling by the Minnesota Commerce Department, its ruling is entitled to "respectful consideration." *See Law Students Civil Rts. Council v. Wadmond*, 401 U.S. 154, 91 S.Ct. 720, 27 L.Ed.2d 749 (1971).

Plaintiff does not dispute that Corporate Underwriters was and is not a licensed insurer in Minnesota. It argues nonetheless that ARP had no exposure to a risk of loss for the relevant period and therefore has no entitlement to premiums. One basis for this argument is RNW's assertion that, by virtue of a required employment agreement, its employees agreed to elect Wisconsin benefits. The Court does not find the language of the employee agreement to explicitly have that effect. It simply states "any on the job injuries sustained must be reported to R.N.W. Associates, Inc. within twenty four (24) hours. These benefits are included under the Wisconsin Workmen's Compensation Act and the corporate structure of R.N.W. Associates, Inc." Affidavit of Reynaud Harp, Exh. A, Exh. 9. Second, not all policies covering workers in Wisconsin would necessarily cover them if injured in Minnesota. The president of the Wisconsin Compensation Rating Bureau, L.N. Hannes, states, in a letter submitted by counsel Harp, that a policy issued through the Wisconsin Worker's Compensation Insurance Pool "could not provide benefits to employees who are regularly working at or out of a terminal or other location outside the state of Wisconsin." He further indicates that the Wisconsin Pool Committee has taken the position that "when employees are leased by a firm to another firm, it is the user of these employees that is the legitimate employer." Affidavit of Reynaud Harp, Exh. F.

Plaintiff's argument that Minn.Stat. § 60A.08 subd. 4 transforms its insurance coverage into a contract made in Minnesota does not resolve the problem. That statute states that insurance contracts on interests in the state "shall be deemed to be made in this state." Even if RNW's contract with Corporate Underwriters were deemed made in Minnesota, it still would not meet ARP's requirements because Corporate Underwriters was not a licensed insurer in the state.

Furthermore, plaintiff's argument fails that Minn.Stat. § 60A.19 subd. 8 provides a basis to validate its use of Corporate Underwriter's policy. That statute allows a party to use a non-licensed insuror, if the party *seeking the insurance* gives a bond to the Commissioner of Commerce and pays a certain tax. No such bond has been negotiated and the statute does not apply.

In sum, the Court found that no legal or factual basis exists on which it could have issued the declaratory judgment plaintiff sought. Defendant ARP, therefore, has the right to assess premiums for workers leased by Minnesota companies who do not have workers' compensation coverage from an insurer licensed in Minnesota.